Filed 1/2/20

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GREGORY LAMAR LOWERY et al.,<br><br>    Defendants and Appellants. | F076484<br><br>(Super. Ct. Nos. 16CR-02612A,<br>16CR-02612B)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Jeanne Schechter, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant Gregory Lamar Lowery.

John Steinberg, under appointment by the Court of Appeal for Defendant and Appellant Bryan Joseph Green.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Catherine Chatman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I, II and IV of the Discussion.

# INTRODUCTION

On April 11, 2016, appellants Gregory Lamar Lowery and Bryan Joseph Green robbed three separate businesses in the area of Merced, California. They were both armed with firearms, and four victims had guns pointed at them during the various robberies. A jury convicted both appellants of four counts of second degree robbery (Pen. Code, § 211;[1] counts 1-4) and for being felons in possession of a firearm (§ 29800, subd. (a)(1); count 5). The jury found true alleged firearm enhancements (§ 12022.53, subd. (b)). The trial court found true that Green had suffered a prior serious felony conviction.

Lowery received an aggregate prison term of 24 years eight months. This consisted of an upper term of five years in count 2 (second degree robbery), along with a 10-year firearm enhancement (§ 12022.53, subd. (b)). Consecutive one-third terms were imposed for the three other robbery convictions (counts 1, 3-4), along with respective firearm enhancements in counts 3 and 4.[2] The court imposed a concurrent middle term of two years for being a felon in possession (count 5). The court imposed a restitution fine of $6,900 (§ 1202.4, subd. (b)(1)); a parole revocation restitution fine of $6,900 (§ 1202.45, subd. (a), which was stayed pending successful completion of parole); a court operations assessment of $200 (§ 1465.8, subd. (a)(1)); and a criminal conviction assessment of $150 (Gov. Code, § 70373, subd. (a)(1)). The court did not ascertain Lowery's ability to pay these fees, fines and assessments prior to imposing them.[3]

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

[2] A firearm enhancement was not alleged against Lowery in count 1.

[3] A restitution fine (§ 1202.4, subd. (b)(1)) represents punishment. (*People v. Hanson* (2000) 23 Cal.4th 355, 361–363.) In contrast, a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)) are not considered punishment. (*People v. Alford* (2007) 42 Cal.4th 749,

Green received an aggregate prison term of 41 years. This consisted of an upper term of five years in count 1 (second degree robbery), doubled because of a strike prior, along with a 10-year firearm enhancement (§ 12022.53, subd. (b)). A five-year enhancement was imposed in count 1 under section 667, subdivision (a)(1). Consecutive one-third terms were imposed for the three other robbery convictions, along with their respective firearm enhancements. The court imposed a concurrent middle term of two years for being a felon in possession (count 5). The court imposed a restitution fine of $10,000 (§ 1202.4, subd. (b)(1)); a parole revocation restitution fine of $10,000 (§ 1202.45, subd. (a), which was stayed pending successful completion of parole); a court operations assessment of $200 (§ 1465.8, subd. (a)(1)); and a criminal conviction assessment of $150 (Gov. Code, § 70373, subd. (a)(1)). The court did not ascertain Green's ability to pay these fees, fines and assessments prior to imposing them.[4]

Appellants contend this matter must be remanded so the sentencing court may exercise its discretion to strike or dismiss their respective firearm enhancements pursuant to Senate Bill No. 620 (2017-2018 Reg. Sess.) (Senate Bill 620). Green further asserts remand is required for the court to exercise its discretion to strike his five-year sentence enhancement (§ 667, subd. (a)(1)) pursuant to Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393). We conclude a remand is not warranted for either of these issues. Based on the sentencing record, it is abundantly clear the court would not have exercised its discretion to strike or dismiss any of these enhancements.

757 [§ 1465.8]; *People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1112 [Gov. Code, § 70373].)

[4]     Pursuant to section 1202.4, subdivision (f), the court ordered appellants to pay restitution of $9,450 to three victims. The court reserved jurisdiction as to two remaining victims. This obligation was ordered "joint and several." In section IV, below, we order correction of the abstracts of judgment to properly reflect the victim restitution imposed in this matter.

The parties dispute whether or not the court properly imposed the various fees, fines and assessments against appellants. Appellants rely primarily on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In the published portion of this opinion, we find that appellants have forfeited this claim. In any event, *Dueñas* is distinguishable from the present matter, and appellants' respective constitutional rights were not violated. We also conclude that any presumed constitutional error was harmless.

Finally, a clerical error appears in the respective abstracts of judgment. We order them amended to reflect the direct victim restitution of $9,450. (§ 1202.4, subd. (f).) We otherwise affirm appellants' respective judgments.

## BACKGROUND

Because the issues raised on appeal relate to sentencing, we provide only a general summary of the trial facts supporting the convictions.

## I.     The Armed Robberies.

On April 11, 2016, appellants entered three separate businesses, and they robbed four victims. Surveillance video at each location captured significant portions of appellants' robberies. Those videos were played for the jury. At trial, appellants did not present any evidence.

### A.     The first robbery.

The first robbery occurred at a market in Merced. Lowery grabbed an envelope containing about $200 to $300, which had been under a counter. He ran from the business. The owner's son, B.K., pursued him. Outside the business, B.K. caught Lowery, and he grabbed the envelope back. They began to scuffle. B.K. and Lowery ended up on the ground. Green approached and put a gun to B.K.'s head. B.K. relinquished the money, and appellants each kicked B.K.'s head before fleeing. At trial, B.K. identified appellants as the robbers.

4.

## B. The second robbery.

Shortly after robbing B.K., appellants entered a liquor store in Merced. Several customers were present. The store's owner, K.S., was behind the counter. Green went behind the counter and he put a gun to K.S.'s head. A cash drawer was already open. Green asked for "extra money" and threatened to kill K.S. K.S. opened another drawer. Green, who kept his gun pointed at K.S.'s head, took money from both drawers. Lowery also displayed a firearm. He directed the customers to sit on the floor. At one point, Lowery reached over the counter and also removed cash from a drawer. Appellants exited the liquor store without further incident.

In addition to taking cash from the registers, appellants took personal items belonging to K.S., such as his driver's license, his wife's identification card, and various debit and credit cards. Later that same day, a clerk working at a local gas station found these personal items discarded on the ground near a dumpster outside.

## C. The final robbery.

Later that same day, appellants entered a convenience store in Winton, California. Green went behind a counter where two clerks, G.S. and her son J.S., were working. Green pointed a gun at J.S. He demanded money, threatening he would shoot. Lowery displayed his own firearm and directed customers to sit down. Lowery also went behind the counter and demanded the cash registers to be opened. Once the registers were open, appellants took about $10,000. They left without further incident. At trial, G.S. identified Lowery as one of the two robbers.

After appellants left, J.S. discovered a bullet on the floor away from the cash registers. At trial, he told the jury that, during this robbery, one of the suspects had "racked" a handgun.

## II. Appellants Purchase Two Used Vehicles.

After the three robberies, and later on the same day, Green purchased a used Saab from a dealership in Merced. At the same time, both Lowery and Green also

purchased a used Jaguar from the same dealer. They paid in cash for both vehicles. In court, the dealer identified appellants as the two individuals who purchased those vehicles.

### III.    Lowery Confesses To Robbing B.K. From The First Business.

Law enforcement quickly identified appellants as the suspects. A detective reviewed video at the gas station where the personal items belonging to K.S. had been discovered. In the video, the detective saw a white Buick Skylark enter the parking lot and two subjects exit the vehicle. One subject "dumped" some "items in the garbage." The other subject walked into the store. The second subject wore a T-shirt that read, " 'I'm on one.' " According to K.S., the victim in the second robbery, one of the suspects had worn that same T-shirt. Another detective, who was familiar with appellants, recognized them in the gas station video. Lowery was taken into custody and he was interviewed. He admitted taking the envelope of cash from the counter of the first market. He denied any involvement in the other two robberies. He admitted that, when the first robbery occurred, he was wearing a T-shirt which said, "I'm on one."

On April 12, 2016, law enforcement searched Green's residence. They recovered two different types of ammunition. A "white over gray Buick Skylark" was parked in the driveway. This vehicle was registered to Green.

### DISCUSSION

### I.    Remand Is Not Warranted For The Trial Court To Exercise Its Sentencing Discretion Under Senate Bill 620.*

At the time of sentencing in this matter, the trial court was required to impose additional prison terms for the firearm enhancements found true under section 12022.53. (Former § 12022.53, subd. (d).) On October 11, 2017, however, the

---

\*     See footnote, *ante*, page 1.

6.

Governor approved Senate Bill 620, which amended, in part, section 12022.53. A trial court now has discretion to strike or dismiss these firearm enhancements. (§ 12022.53, subd. (h).)

The parties agree, as do we, that these amendments apply retroactively to appellants because their cases are not yet final. (*People v. Woods* (2018) 19 Cal.App.5th 1080, 1090.) The parties, however, disagree whether remand is appropriate. Respondent asserts that a remand would serve no purpose. According to respondent, no reasonable court would exercise its discretion to strike appellants' respective firearm enhancements. (See *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) To support its position, respondent focuses on appellants' criminal conduct in this matter and the court's comments at sentencing. We agree with respondent that, based on this sentencing record, remand is not warranted.

Remand is necessary when the record shows the trial court proceeds with sentencing on the erroneous assumption it lacks discretion. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) If, however, the record shows the sentencing court "would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 (*McDaniels*).) Certain factors may be germane in assessing whether a trial court is likely to exercise its sentencing discretion in the defendant's favor. Those factors are: (1) the egregious nature of the defendant's crimes; (2) the defendant's recidivism; and (3) the fact that consecutive sentences were imposed. (*Id.* at p. 427.) However, these factors alone cannot establish what the court's discretionary decision would have been. (*Ibid.*) If the court imposes the maximum sentence permitted, a remand would be an idle act because the record contains a clear indication the court would not exercise its discretion in the defendant's favor. (*Ibid.*)

During sentencing, Lowery's trial counsel asked the court to impose a middle term for the robbery conviction representing the base term. The court, however,

declined that sentencing option. The court stated that Lowery's actions involved "a threat of great bodily harm or a high degree of viciousness." Lowery "engaged in violent conduct indicating a serious danger to society." The court noted that Lowery's "prior convictions are of increasing seriousness."[5] The court said it looked "hard" for factors in mitigation for Lowery, but it could not find any. The court recognized that Lowery's and Green's behaviors differed because it was Green who "went behind the counter and put the guns to the heads of the clerks." However, the court noted that, although Lowery was not as aggressive, he was still holding people at gunpoint. The court stated that, even if it had discretion to not sentence the firearm enhancements consecutively, it would still impose them consecutively. As to Lowery, the court designated count 2 (second degree robbery) as the principal term, and it imposed an aggravated sentence of five years. The court said an aggravated sentence was appropriate based on the facts of the case. The court imposed consecutive sentences for the remaining three convictions of second degree robbery (counts 1, 3-4).[6]

Regarding Green, his trial counsel sought concurrent sentences for the four robbery convictions. He asserted that section 654 should be used for the convictions in counts 3 and 4 because they involved a single incident with two victims. Green's counsel also requested a middle term for the robbery conviction representing the base term. He argued a concurrent sentence from the prior serious felony enhancement was warranted, along with a concurrent term for the possession of a firearm conviction

---

[5]    Lowery had a prior 2010 felony conviction for carrying a loaded firearm (§ 12031, subd. (a)(1)) and a 2004 felony conviction for vehicle theft (Veh. Code, § 10851, subd. (a)). Among other misdemeanor convictions, he had a 2013 misdemeanor conviction for willful cruelty to a child (§ 273a, subd. (b)), and a 2004 misdemeanor conviction for the manufacture, sale, or possession of a dangerous weapon (§ 12020, subd. (a)(1)). He was generally given jail sentences and probation for these various felony and misdemeanor convictions.

[6]    In count 5, felon in possession of a firearm (§ 29800, subd. (a)(1)), the court imposed a concurrent middle term of two years.

(count 5). In contrast, the prosecutor argued for the upper term and consecutive sentences.

The court "found the same aggravating factors" as it had for Lowery.[7] The court commented that Green's behavior had been "appalling" and "terrifying" for the victims. The court noted that Green had pointed the gun directly at two victims, and "your behavior is just off the charts here, as far as the Court's concerned." The court could not find any factors in mitigation. The court designated count 1 (second degree robbery) as the principal term, and it imposed an aggravated sentence of five years. The court stated an aggravated sentence was appropriate in this situation. The court imposed consecutive sentences for the remaining three convictions of second degree robbery (counts 2-4).[8] The court commented that it did not have discretion to impose a concurrent enhancement for Green's prior serious felony conviction (§ 667, subd. (a)(1)). However, the court stated that, even if it had such discretion, it would not impose a concurrent enhancement.

This record reveals a clear indication that the trial court would not have struck or dismissed appellants' respective firearm enhancements even if it had such discretion. For both appellants, the court imposed an upper term sentence for second degree robbery, and it imposed additional consecutive sentences. The court commented on the egregious nature of appellants' actions and their recidivism. (See *McDaniels*, *supra*, 22 Cal.App.5th at p. 427.) When sentencing Lowery, the court stated that, even if it had

---

[7]     Green had a prior 2007 felony conviction for robbery (§ 211), and a 2012 felony conviction for possession of concentrated cannabis (Health & Saf. Code, § 11357, subd. (a)). He also had two misdemeanor convictions in 2007 for driving without a license (Veh. Code, § 12500, subd. (a)). In 2012, Green's probation was revoked and he was sentenced to three months in prison.

[8]     In count 5, felon in possession of a firearm (§ 29800, subd. (a)(1)), the court imposed a concurrent middle term of two years, which was doubled because of his prior strike.

discretion to not sentence the firearm enhancements consecutively, it would still impose them consecutively. When sentencing Green, the court stated that, even if it had discretion to impose a concurrent enhancement for his prior serious felony conviction (§ 667, subd. (a)(1)), it would not do so.

Based on this sentencing record, remand would be an idle act and it is not required.[9] (See *People v. Gutierrez*, *supra*, 48 Cal.App.4th at p. 1896 [denying remand after sentencing court indicated it would not have exercised its discretion to strike a Three Strikes prior even if it had believed it could have done so]; *McDaniels*, *supra*, 22 Cal.App.5th at p. 427.) Accordingly, we deny appellants' respective requests for remand for the court to exercise its discretion under Senate Bill 620.

## II. Remand Is Not Warranted For The Trial Court To Exercise Its Sentencing Discretion Under Senate Bill 1393.[*]

At the time of Green's sentencing in this matter, the trial court was required to impose an additional five-year prison term based on his prior serious felony conviction. (Former § 667, subd. (a)(1).) On September 20, 2018, however, the Governor signed Senate Bill 1393, which amended sections 667 and 1385 to provide sentencing courts with discretion to strike or dismiss this enhancement.

We agree with the parties that this amendment applies retroactively to Green. (*People v. Sexton* (2019) 37 Cal.App.5th 457, 473.) The parties, however, disagree whether remand is warranted. We agree with respondent that a remand would serve no purpose.

---

[9]     In light of the court's comments and other sentencing choices, our conclusion is not altered by the fact that, in count 5, the court imposed concurrent terms for appellants' respective convictions of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).

[*]     See footnote, *ante*, page 1.

We have already set forth above the relevant portions of the sentencing record. The court made it abundantly clear that, even if it had discretion, it would not order Green's five-year sentence enhancement (§ 667, subd. (a)(1)) to run concurrently. Based on that comment alone, it is overwhelmingly apparent that the court would not strike or dismiss this enhancement. In any event, the court found no factors in mitigation and stated that Green's behavior had been "appalling" and "terrifying" for the victims. The court noted that Green had pointed the gun directly at two victims, and "your behavior is just off the charts here, as far as the Court's concerned." The court imposed an aggravated sentence against him, and it ordered additional consecutive sentences.

Based on this sentencing record, the trial court gave a clear indication it would not have exercised its discretion to strike or dismiss this enhancement even if it had the discretion to do so. As such, remand would be an idle act and is not required.[10] (See *People v. Gutierrez*, *supra*, 48 Cal.App.4th at p. 1896 [denying remand after sentencing court indicated it would not have exercised its discretion to strike a Three Strikes prior even if it had believed it could have done so]; *McDaniels*, *supra*, 22 Cal.App.5th at p. 427.) Accordingly, we deny Green's request for remand for the court to exercise its discretion following Senate Bill 1393.

III.    **Appellants Have Forfeited Their Claims Under *Dueñas*; In Any Event, *Dueñas* Is Distinguishable From The Present Matter; The Trial Court Did Not Violate Appellants' Constitutional Rights; And Any Presumed Error Is Harmless.**

Appellants challenge the imposition of the assessments imposed against them under section 1465.8, subdivision (a)(1), and Government Code section 70373, subdivision (a)(1). They also challenge the restitution fines imposed against them under

---

**10**    In light of the court's comments and other sentencing choices, our conclusion is not altered by the fact that, in count 5, the court imposed a concurrent term for Green's conviction of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).

11.

section 1202.4, subdivision (b)(1). Their claims are based primarily on *Dueñas*, *supra*, 30 Cal.App.5th 1157. They assert that *Dueñas* controls, they did not forfeit this issue, and remand is required for the lower court to conduct further proceedings.

In *Dueñas*, the defendant was an indigent, homeless mother of two, who subsisted on public aid while suffering from cerebral palsy. She had dropped out of high school because of her illness, and she was unemployed. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160–1161.) As a teenager, the defendant's driver's license was suspended when she could not pay some citations. (*Id.* at p. 1161.) She then was convicted of a series of misdemeanor offenses for driving with a suspended license, and in each case, she was given the choice to pay mandatory fees and fines, which she lacked the means to do, or go to jail. (*Ibid*.) She served jail time in the first three of these cases, but still faced outstanding debt, which increased with each conviction. (*Ibid.*)

After her fourth conviction of driving with a suspended license, the defendant was placed on probation and again ordered to pay mandatory fees and fines. The court imposed a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)); a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and a minimum $150 restitution fine (§ 1202.4, subd. (b)(1)).[11] The court also imposed and stayed a probation revocation restitution fine (§ 1202.44). (*Dueñas, supra*, 30 Cal.App.5th at pp. 1161–1162.) The defendant challenged the fees and fines imposed under sections 1202.4 and 1465.8, and Government Code section 70373. (*Dueñas*, at p. 1164.) The trial court rejected her constitutional arguments that due process and equal protection required the court to consider her ability to pay these fines and assessments. (*Id.* at p. 1163.) On appeal, however, the *Dueñas* court determined that the defendant's due

---

[11]  The minimum restitution fine for a misdemeanor is $150. The minimum restitution fine for a felony is $300. (§ 1202.4, subd. (b)(1).)

process rights had been infringed.  According to *Dueñas*, an ability to pay hearing was required so the defendant's "present ability to pay" could be determined before assessments were levied for a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)).[12]  (*Dueñas*, at p. 1164.)  The *Dueñas* court also concluded that the minimum restitution fine of $150 (§ 1202.4, subd. (b)(1)) had to be stayed.  The appellate court reached that conclusion despite section 1202.4 barring consideration of a defendant's ability to pay unless the judge is considering a fine over the statutory minimum.  (§ 1202.4, subd. (c).)  *Dueñas* held that "execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.)

We find appellants' assertions based on *Dueñas* unavailing.  As an initial matter, appellants have forfeited these claims.  In any event, *Dueñas* is distinguishable from the present matter, and appellants' respective constitutional rights were not violated. Finally, any presumed constitutional error is harmless beyond any reasonable doubt.

### A.  Appellants have forfeited the *Dueñas*-related claims.

Section 1202.4, subdivision (b)(1), requires a court to impose a restitution fine in an amount not less than $300 and not more than $10,000 in every case where a person is convicted of a felony unless it finds compelling and extraordinary reasons not to do so. Section 1202.4, subdivision (c), specifies a defendant's inability to pay is not a compelling and extraordinary reason to refuse to impose the fine, but inability to pay "may be considered only in increasing the amount of the restitution fine in excess of the minimum fine [of $300]."  While the defendant bears the burden of demonstrating his or her inability to pay, a separate hearing for the restitution fine is not required.  (§ 1202.4,

---

[12]     Nothing in these statutes authorizes a trial court to consider a defendant's ability to pay.

13.

subd. (d).)  "Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed."  (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)

Here, and unlike the defendant in *Dueñas*, appellants did not object to the fees, fines and assessments imposed against them.  Appellants also did not request a hearing regarding their ability to pay.  Contrasting the present circumstances with *Dueñas*, where the court imposed the *minimum* restitution fine, appellants had such fines imposed which were far above the minimum of $300.  (§ 1202.4, subd. (b)(1).)  In fact, Green had the *maximum* restitution fine imposed of $10,000, while Lowery's restitution fine was $6,900.

We disagree with appellants' assertions that *Dueñas* represents a newly announced rule of law, or that this issue raises a pure question of constitutional law that involves no factual dispute.  To the contrary, appellants had a statutory right, and were obligated, to object to the imposition of the restitution fines above the $300 minimum.  (§ 1202.4, subd. (c) [inability to pay may be considered when the restitution fine is increased above the minimum].)  A factual determination was required regarding their alleged inability to pay.  (See *People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1153.)  Thus, such objections would not have been futile under governing law when appellants were sentenced.  (*Id.* at p. 1154.)  We stand by the traditional rule that a party must raise an issue in the trial court if they would like appellate review.  (*Id.* at p. 1155.)

We reach the same conclusion with respect to the remaining assessments and fees.  Because appellants failed to object to the restitution fines, which were well above the minimum amount, we likewise reject any assertion they may now complain that the trial court imposed a court operations assessment of $200 (§ 1465.8, subd. (a)(1)); and a criminal conviction assessment of $150 (Gov. Code, § 70373, subd. (a)(1)).  (See *People v. Jenkins* (2019) 40 Cal.App.5th 30, 40–41; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [finding forfeiture of *Dueñas*-related claims].)

Based on this record, appellants have forfeited their *Dueñas*-related claims.  (See, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 729 [defendant forfeited issue by failing to object to imposition of restitution fine based on inability to pay]; see also *People v. Jenkins*, *supra*, 40 Cal.App.5th at pp. 40–41 [*Dueñas* error forfeited]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1073 (*Aviles*) [same]; *People v. Torres* (2019) 39 Cal.App.5th 849, 860 [same]; *People v. Gutierrez*, *supra*, 35 Cal.App.5th at p. 1033 [same]; *People v. Frandsen*, *supra*, 33 Cal.App.5th at p. 1154 [same]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [same].)

## B.     *Dueñas* **is distinguishable from the present matter.**

According to the *Dueñas* court, the defendant lost her driver's license because she was too poor to pay her juvenile citations.  She continued to offend because the aggregating criminal conviction assessments and fines prevented her from recovering her license.  The *Dueñas* court described this as "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [the defendant's] poverty."  (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1163–1164.)

Even if appellants have not forfeited these claims, we reject appellants' assertions that *Dueñas* applies to them.  In contrast to *Dueñas*, appellants' incarcerations were not a consequence of prior criminal assessments and fines.  Appellants were not caught in an unfair cycle, and they could have avoided the present convictions regardless of their financial circumstances.  *Dueñas* is distinguishable and it has no application in this matter.  (See *People v. Caceres* (2019) 39 Cal.App.5th 917, 928–929 [declining to apply *Dueñas*'s "broad holding" beyond its unique facts]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 138 ["*Dueñas* is distinguishable."].)

## C.     **The court did not violate appellants' constitutional rights.**

Even if forfeiture did not occur, we reject any argument that the trial court violated appellants' constitutional rights.  The *Dueñas* defendant presented compelling

evidence that the imposed assessments resulted in ongoing *unintended* punitive consequences. The *Dueñas* court determined that these unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process.[13] (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The *Dueñas* court noted that the imposed financial obligations were also potentially unconstitutional under the excessive fines clause of the Eighth Amendment. However, *Dueñas* stated that "[t]he due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that '[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process.' [Citation.]" (*Dueñas*, *supra*, at p. 1171, fn. 8.)

Both *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted September 14, 2019, S258946 (*Hicks*) and this court's opinion in *Aviles*, *supra*, 39 Cal.App.5th 1055, have strongly criticized *Dueñas*'s analysis. (*Hicks*, *supra*, 40 Cal.App.5th at p. 322, review granted; *Aviles*, *supra*, 39 Cal.App.5th at pp. 1059–1060.) We agree with those criticisms. (See also *People v. Kingston* (2019) 41 Cal.App.5th 272, 279 [finding *Hicks* to be "better reasoned" than *Dueñas*]; *People v. Caceres*, *supra*, 39 Cal.App.5th at p. 928 ["In light of our concerns with the due process analysis in *Dueñas*, we decline to apply its broad holding requiring trial courts in all cases to determine a defendant's ability to pay before imposing court assessments or restitution fines."].)

This court in *Aviles* held that, in contrast to a due process challenge, the " 'excessive fines' " clause in the Eighth Amendment to the United States Constitution was a more appropriate avenue for an indigent defendant to challenge the imposition of

---

**13** *Dueñas*'s conclusion in this regard has been criticized. It has been noted that "*Dueñas* did not involve the right to access the courts, the defendant's liberty interests, or any other fundamental right." (*People v. Santos* (2019) 38 Cal.App.5th 923, 938 (dis. opn. of Elia, J.).) It has also been stated that the imposition of fees, fines and assessments does not satisfy "the traditional due process definition of a taking of life, liberty or property." (*People v. Gutierrez*, *supra*, 35 Cal.App.5th at p. 1039 (conc. opn. of Benke, Acting P.J.).)

16.

fees, fines and assessments.  (*Aviles*, *supra*, 39 Cal.App.5th at p. 1069.)  Under its facts, *Aviles* found no constitutional violation for the imposition of assessments and fines imposed on a felon who, after fleeing from officers, shot and wounded two of them. (*Id.* at pp. 1059–1060.)  *Aviles* also concluded that any presumed error was harmless because the felon had the ability to earn money while in prison.  (*Id.* at pp. 1075–1077.)

The *Hicks* court held that, in contrast to *Dueñas*'s application of due process, a due process violation must be based on a fundamental right, such as denying a defendant access to the courts or incarcerating an indigent defendant for nonpayment. *Hicks* concluded that *Dueñas*'s analysis was flawed because it expanded due process in a manner that grants criminal defendants a right not conferred by precedent; that is, an ability to pay hearing *before* assessments are imposed.  (*Hicks*, *supra*, 40 Cal.App.5th at pp. 325–326, review granted.)  Under its facts, *Hicks* rejected a due process challenge to the imposition of fines and assessments on a felon who, while under the influence of a stimulant, resisted arrest.  (*Id.* at pp. 323, 329–330.)

### 1. Appellants' due process rights were not violated.

In this matter, the fees, fines and assessments imposed against appellants do not implicate the traditional concerns of fundamental fairness.  Appellants were not denied access to the courts or prohibited from presenting a defense.  (See *Griffin v. Illinois* (1956) 351 U.S. 12, 18–20 [due process and equal protection require a state to provide criminal defendants with a free transcript for use on appeal]; *People v. Kingston*, *supra*, 41 Cal.App.5th at p. 281; *Hicks*, *supra*, 40 Cal.App.5th at p. 326, review granted.) Appellants were not incarcerated because they were unable to pay prior fees, fines or assessments.  (See *Bearden v. Georgia* (1983) 461 U.S. 660, 672–673 (*Bearden*) [fundamental fairness is violated if a state does not consider alternatives to imprisonment if a probationer in good faith cannot pay a fine or restitution]; *People v.*

*Kingston*, *supra*, 41 Cal.App.5th at p. 281; *Hicks*, *supra*, 40 Cal.App.5th at p. 326, review granted.)

The unique concerns addressed in *Dueñas* are lacking here. Nothing establishes or even reasonably suggests that appellants face ongoing unintended punitive consequences. Appellants do not establish how they suffered a violation of a fundamental liberty interest. Because unintended consequences are not present, it was not fundamentally unfair for the court to impose the fees, fines and assessments in this matter without first determining appellants' ability to pay.[14] As such, the trial court did not violate appellants' due process rights, and this claim fails.[15] (See *People v. Kingston*, *supra*, 41 Cal.App.5th at p. 282; *Hicks*, *supra*, 40 Cal.App.5th at p. 329, review granted.)

### 2. The fees, fines and assessments were not grossly disproportionate under the Eighth Amendment.

Green asserts that imposition of the fees, fines and assessments imposed against him violated the excessive fines clause of the Eighth Amendment. We find Green's excessive fines challenge unpersuasive.[16]

---

[14] We note that the court was permitted to impose fines upon appellants following their convictions. (See, e.g., *Bearden*, *supra*, 461 U.S. at p. 669 [a state has a fundamental interest in "appropriately punishing persons—rich and poor—who violate its criminal laws" and poverty does not immunize a defendant from punishment].)

[15] Respondent concedes that due process is violated when an indigent defendant is imprisoned for failure to pay a punitive fine "because the fundamental right to liberty is implicated." Respondent urges us to resolve this due process challenge using a rational basis (as opposed to strict scrutiny) analysis. We need not fully respond to respondent's position in this regard or articulate the appropriate standard of review for a due process challenge in this situation. To the contrary, appellants' due process claims are based primarily on *Dueñas*, which neither articulated what fundamental liberty interest was at stake nor set forth a standard of review.

[16] Although only Green raises a challenge under the excessive fines clause, we apply the same analysis to Lowery because they are similarly situated.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality:  The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."  (*United States v. Bajakajian* (1998) 524 U.S. 321, 334 (*Bajakajian*).)  "The California Supreme Court has summarized the factors in *Bajakajian* to determine if a fine is excessive in violation of the Eighth Amendment:  '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.  [Citations.]'  [Citations.]"  (*Aviles*, *supra*, 39 Cal.App.5th at p. 1070.)  While ability to pay may be part of the proportionality analysis, it is not the only factor.  (*Bajakajian*, *supra*, 524 U.S. at pp. 337–338.)

According to *Bajakajian*, two considerations are particularly relevant in deriving a constitutional excessiveness standard.  First, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature."  (*Bajakajian*, *supra*, 524 U.S. at p. 336.)  Second, "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise.  Both of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense, and we therefore adopt the standard of gross disproportionality articulated in our Cruel and Unusual Punishments Clause precedents."  (*Ibid.*)

Here, appellants threatened multiple victims with firearms while robbing three businesses.  We must give deference to the Legislature's determination regarding the appropriate punishment.  (*Bajakajian*, *supra*, 524 U.S. at p. 336.)  When the relevant factors are examined, it is abundantly clear that the fees, fines and assessments imposed against them were not "grossly disproportional" under these circumstances.  (*Id.* at p. 334; see also *Aviles*, *supra*, 39 Cal.App.5th at p. 1072; *People v. Gutierrez*, *supra*, 35 Cal.App.5th at pp. 1040–1041 (conc. opn. of Benke, Acting P.J.).)  As such, we reject any assertion that the excessive fines clause of the Eighth Amendment was violated.

### 3. Appellants' rights to equal protection under the law were not violated.

Green contends that imposition of the assessments and fines under Government Code section 70373 and Penal Code sections 1202.4, 1202.45 and 1465.8 violated his rights to equal protection. He relies primarily on *Dueñas* for this claim. We find Green's equal protection claim unpersuasive.[17] We have already concluded that *Dueñas* is distinguishable from the present matter and we will not apply it here. In any event, *Dueñas* based its holding on due process grounds, and not on equal protection. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168, fn. 4.) Four opinions are instructive in resolving an equal protection challenge.

First, in *Williams v. Illinois* (1970) 399 U.S. 235 (*Williams*), the United States Supreme Court invalidated on equal protection grounds a facially neutral statute that authorized imprisonment for an indigent's failure to pay fines. (*Id.* at pp. 241–242.)

Second, in *Tate v. Short* (1971) 401 U.S. 395 (*Tate*), the United States Supreme Court expanded upon *Williams*. The *Tate* court held that equal protection was violated when an indigent defendant was committed to a "municipal prison farm" because he could not pay accumulated fines of $425 based on nine convictions for traffic offenses. (*Tate* at pp. 396–397.) The high court noted that the defendant "was subjected to imprisonment solely because of his indigency." (*Id.* at p. 398.) Important to the issue before us, the *Tate* court commented that a state has a "valid interest in enforcing payment of fines." (*Id.* at p. 399.) According to *Tate*, a state "is not powerless to enforce judgments against those financially unable to pay a fine; indeed, a different result would amount to inverse discrimination since it would enable an indigent to avoid both the fine and imprisonment for nonpayment whereas other defendants must always suffer one or the other conviction." (*Ibid.*) The high court stated that " 'numerous

---

[17]    Although only Green raises a challenge under equal protection, we apply the same analysis to Lowery because they are similarly situated.

alternatives' " existed for a state to avoid "imprisoning an indigent beyond the statutory maximum for involuntary nonpayment of a fine or court costs." (*Ibid.*) However, those alternatives were left for the states to explore. (*Id.* at p. 400.)

Third, in *In re Antazo* (1970) 3 Cal.3d 100, the California Supreme Court held that an indigent defendant could not be imprisoned for failure to pay a fine. Otherwise a violation of equal protection would occur based on wealth. (*Id.* at pp. 103–104.) Importantly, our high court noted that imposing a fine and penalty assessment on an indigent offender did not by itself necessarily constitute a violation of equal protection. Apart from imprisonment, alternatives exist that could permit an indigent offender to be fined. (*Id.* at p. 116.)

Finally, in *Bearden*, *supra*, 461 U.S. 660, the United States Supreme Court held that a court may not revoke probation for an indigent defendant's inability to pay a fine and restitution, absent evidence and findings that the defendant was responsible for the failure or that alternative forms of punishment were inadequate. Otherwise, the "deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." (*Id.* at pp. 672–673.) The high court, however, reiterated that a state is not powerless to enforce judgments against those financially unable to pay a fine. (*Id.* at pp. 671–672.) *Bearden* also noted that, when a defendant's indigency is involved, due process provides a better analytic framework than equal protection because "a defendant's level of financial resources is a point on a spectrum rather than a classification." (*Id.* at p. 666, fn. 8.) In the same footnote, *Bearden* stated that "[t]he more appropriate question is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." (*Ibid.*)

In light of *Williams*, *Tate*, *In re Antazo* and *Bearden*, it is clear that appellants were not denied equal protection. They were not incarcerated because of their alleged poverty. Appellants do not articulate how a fundamental liberty interest was implicated.

Thus, the trial court was permitted to impose a fine or penalty on them so long as alternatives to imprisonment are offered for purposes of repayment. (*In re Antazo*, *supra*, 3 Cal.3d at p. 116.)

Based on this record, we reject Green's assertion that the court imposed an unauthorized sentence. Appellants failed to bring this issue to the attention of the trial court. (See *People v. Avila*, *supra*, 46 Cal.4th at p. 729 [rejecting assertion that imposition of a fine represented an unauthorized sentence because the defendant failed to object].) In any event, the court's respective orders did not violate appellants' constitutional rights. Accordingly, appellants' claims are without merit. However, as we discuss below, we can also declare that any presumed error is harmless.

### D. Any presumed constitutional violation is harmless.

When sentenced in this matter, Lowery[18] was approximately 32 years old and Green[19] was approximately 28 years old. Nothing from this record suggests that they suffer from any physical or mental limitations.

Unlike the *Dueñas* defendant who was placed on probation and subjected to a recurring cycle of debt, appellants were sentenced to relatively lengthy determinate prison terms following their multiple convictions for armed robbery. Nothing in this record suggests they might be unable to work, or that they might be ineligible for prison work assignments. As such, we can infer that they will have the opportunity to earn prison wages and they can start paying these financial obligations. (*Aviles*, *supra*, 39

---

[18] According to the probation report, Lowery was married but currently separated. He has a total of six children, two of whom are in common with his spouse. All of his children are minors. The report indicates he "is a music artist and CEO of his own music record label.… He manages eleven people and that is his form of employment. He did not indicate how much he is earning from this business."

[19] According to the probation report, Green is not married and he is childless. He "was not working prior to his arrest. He was attending Merced College, studying to become an automotive mechanic. He obtained financial aid and was receiving up to $1,500 per semester."

Cal.App.5th at p. 1076; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's prison wages].)

"Prison wages range from $12 to $56 per month, depending on the prisoner's skill level." (*Aviles*, *supra*, 39 Cal.App.5th at p. 1076, citing Cal. Code Regs., tit. 15, § 3041.2; Cal. Dept. of Corrections & Rehabilitation, Adult Institutions Operations Manual (2019), art. 12 (Inmate Pay), §§ 51120.1, 51120.6, pp. 354–356.) "The state may garnish between 20 and 50 percent of those wages to pay the section 1202.4, subdivision (b) restitution fine." (*Aviles*, *supra*, at p. 1076, citing § 2085.5, subds. (a), (c); *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094.) It is illogical to conclude that appellants will not have an ability to begin paying at least some of the imposed fees, fines and assessments while they are incarcerated.

Based on this record, appellants' circumstances are vastly different from the probationer in *Dueñas*. While it may take them considerable time to pay the amounts imposed against them, it is clear they can make payments from either prison wages or monetary gifts from family and friends during their lengthy prison sentences. (*Aviles*, *supra*, 39 Cal.App.5th at p. 1077.) Thus, even assuming a constitutional violation occurred, any alleged error is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Johnson*, *supra*, 35 Cal.App.5th at pp. 139–140.) Therefore, this claim is without merit and remand is unnecessary.

## IV. The Abstracts Of Judgment Contain Clerical Errors.*

During sentencing, the court ordered appellants to pay total victim restitution of $9,450 to three victims (§ 1202.4, subd. (f)). The court reserved jurisdiction as to two remaining victims. This obligation was ordered "joint and several."

Lowery's abstract of judgment incorrectly lists this restitution amount as $9,000. Green's abstract of judgment fails to list this obligation.

---

\* See footnote, *ante*, page 1.

An appellate court may correct clerical errors appearing in abstracts of judgment either on its own motion or upon application of the parties. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) "An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]" (*Ibid*.)

We direct the trial court to cause appellants' abstracts of judgment to be amended to reflect the ordered victim restitution of $9,450. (§ 1202.4, subd. (f).) The abstracts shall reflect that the respective obligations are "joint and several" to each other. The court shall have the amended abstracts forwarded to the appropriate authorities.

## DISPOSITION

The trial court shall cause appellants' respective abstracts of judgment to reflect the ordered victim restitution of $9,450. (§ 1202.4, subd. (f).) Appellants' abstracts shall reflect that their respective obligations are "joint and several" to each other. The court shall have the amended abstracts forwarded to the appropriate authorities. In all other respects, appellants' judgments are affirmed.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.


_____
POOCHIGIAN, J.

24.