Filed 9/15/20  P. v. Trice CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>NOAH RANDY TRICE,<br><br>　　Defendant and Appellant. | 2d Crim. No. B302249<br>(Super. Ct. No. BA443150)<br>(Los Angeles County) |

　　Noah Randy Trice appeals from the judgment entered after a jury convicted him of second degree murder.  (Pen. Code, §§ 187, 189.)[1]  The jury found true an enhancement allegation that, "within the meaning of Penal Code section 12022.53(d)," he had "personally and intentionally discharged a firearm" causing death to a human being.  The trial court denied appellant's motion to strike the firearm enhancement.  It sentenced him to

---

　　[1] Unless otherwise stated, all statutory references are to the Penal Code.

15 years to life for the second degree murder plus a consecutive term of 25 years to life for the firearm enhancement.

Appellant contends that the trial court abused its discretion in denying his motion to strike the enhancement. He also claims that, pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the matter must be remanded so that the trial court can conduct a hearing on his ability to pay assessments and fines. We affirm.

*Facts*

One afternoon Doris Diaz was walking through a park when she saw a younger man and an older man standing "really, really close to each other, . . . facing each other." Diaz turned around. She heard four shots fired "really fast, like boom, boom, boom, boom." Diaz turned around again so that she was facing the two men. The older man was lying on the ground. The younger man "walk[ed] over the" older man, "and he lifted his jacket and he put a gun in his waist." The younger man fled in the direction of "the metro station." Diaz identified appellant as the younger man.

Brittish Stewart and her three children were at the park. While watching her children play in a playground, she heard "[t]wo pops" followed by a third pop. In "the picnic area" about 20 feet away from her, she saw appellant standing with his "right arm extended directly forward from [his] body and down at a 45-degree angle, pointing towards the ground." Another man was sitting on a bench five to seven feet in front of appellant. The other man had been there when Stewart arrived at the park. He "was just sitting there" and was not "interact[ing] with anybody." Stewart heard a fourth pop and saw appellant running away.

2

She walked over to the other man. "He was on the ground, and [Stewart] saw blood."

Sandra Canote was inside her office when she heard two to three gunshots coming from the park. She looked out the window and saw one person standing over another person lying on the ground. The person who was standing had his right arm fully extended "at a 45-degree angle . . . pointing down towards the ground." Canote heard a fourth gunshot, after which the person who had been standing ran away.

The victim had four gunshot wounds. A wound to the head was fatal.

Police officers were informed that a suspect in the shooting had "entered the metro expo line and was traveling westbound from the location." The police stopped the train and went "from car to car to sweep it" in search of the suspect. When they entered "the second train unit," appellant "approached [them] with his hands up."

During interrogation by the police, appellant said: "I just got, like, really angry for some reason. I just walked over to [the victim] and I can't even remember . . . what [he] said, but . . . I saw him going for his waist. And I just . . . shot him . . . . [H]is body was on the fucking floor." "I didn't want to fucking shoot him. But I didn't want to get shot . . . ."

Appellant testified as follows: After entering the park, he saw the victim sitting on a bench in the picnic area and staring at him. The victim got up from the bench and walked toward appellant. They got into a "heated" argument. The victim reached toward his waist, and appellant "thought he was reaching for a gun." Although appellant did not see a gun, he "thought [he] was going to be shot." Appellant pulled out his gun

and shot the victim.  When appellant saw the police in the train, he walked toward them and said, "'It's me.  I'm sorry.'"

*Factors to be Considered in Determining Whether*
*Court Should Strike a Firearm Enhancement*

"In addition to the factors expressly listed for determining whether to strike enhancements listed in California Rules of Court, rule 4.428(b), the trial court is also to consider the factors listed in California Rules of Court, rule 4.410 (listing general objectives in sentencing), as well as circumstances in aggravation and mitigation under . . . rules 4.421 and 4.423.  '[U]nless the record affirmatively reflects otherwise,' the trial court is deemed to have considered the factors enumerated in the California Rules of Court.  (Cal. Rules of Court, rule 4.409.)  Among other factors the court may have considered were that '[t]he crime involved great violence . . . threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness,' . . . and that the 'victim was particularly vulnerable.' (Cal. Rules of Court, rule 4.421(a)(1)-(3).)"  (*People v. Pearson* (2019) 38 Cal.App.5th 112, 117 (*Pearson*).)

*Trial Court's Reasons for Denying*
*Motion to Strike Firearm Enhancement*

In declining to exercise its discretion to strike the firearm enhancement, the trial court said it had considered the following aggravating factors:  (1) "[T]he crime involved great violence, great bodily harm, threat of great bodily harm and other acts disclosing a high degree of cruelty, viciousness and callousness." (2) "[T]he victim was particularly vulnerable."  (3) Appellant "has engaged in violent conduct that indicates he is a serious danger to society."  (4) Appellant has another pending case for possessing a weapon while in custody.  (5) Appellant's "prior convictions as

an adult or sustained petitions as [a] juvenile . . . are of increasing seriousness." The court found only a single mitigating factor: "he has no record or has [an] insignificant record of criminal conduct."

The court continued, "Balancing the circumstances in aggravation versus the circumstances in mitigation, I am going [t]o decline to exercise my discretion [to strike] the firearm [enhancement]." Appellant did not object to the trial court's statement of reasons for not striking the enhancement.

*Standard of Review*

"[S]ection 12022.53, subdivision (h), [gives] the trial court discretion 'in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section.' (§ 12022.53, subd. (h).) [¶] . . . 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citation.] Second, a "'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' [Citation.]" (*Pearson, supra*, 38 Cal.App.5th at p. 116.)

*Appellant Forfeited Claim that the*
*Trial Court Abused Its Discretion*

Appellant claims that "the trial court abused its discretion by relying on aggravating factors unsupported by the evidence and failing to consider mitigating factors supported by the evidence." The claim is forfeited because appellant did not object to the trial court's statement of reasons for denying his motion to strike the enhancement.

"In [*People v.*] *Scott* [(1994) 9 Cal.4th 331, 353 (*Scott*), the] court . . . announced a new rule: A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly . . . misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons' [citation], but the rule does not apply when the sentence is legally unauthorized [citation]." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) Here, the court's refusal to strike the firearm enhancement did not result in the imposition of a legally unauthorized sentence.

*Even if Appellant Had Objected, the Trial Court*
*Would Not Have Prejudicially Abused Its Discretion*

Even if appellant had properly objected to the trial court's statement of reasons, he would not be entitled to a reversal because he has failed to show that the trial court prejudicially abused its discretion. Appellant contends that the court "abused its discretion by relying on the [aggravating factor of the] particular vulnerability of the victim, where that factor was not

6

supported by the evidence." (Bold omitted.) We disagree. Irrespective of whether the victim was particularly vulnerable when the first three shots were fired, evidence supports his particular vulnerability when the fourth shot was fired. Based on the testimony of Sandra Canote, the court could reasonably infer that appellant fired the fourth shot after the victim had been shot three times and had collapsed to the ground. According to Canote, appellant was standing over the victim with his right arm fully extended "at a 45-degree angle . . . pointing down towards the ground." Canote then heard a fourth gunshot. All four shots struck the victim. Canote's version of events is corroborated by Brittish Stewart's testimony that, before she heard the fourth gunshot, she saw appellant standing with his "right arm extended directly forward from [his] body and down at a 45-degree angle, pointing towards the ground."

Appellant argues that the trial court abused its discretion in finding that his "prior convictions as an adult or sustained petitions as [a] juvenile . . . are of increasing seriousness." We agree that the evidence does not support this aggravating factor. Appellant was 18 years old at the time of the murder. According to the probation report, he had no juvenile history and no prior adult convictions. The only entry in the report under "Adult History" is the filing of a criminal complaint for driving without a license and resisting a police officer. The report states that the disposition of these charges is "unknown."

"When [the trial] court errs in identifying or articulating its sentencing choices, [and, unlike the present case, there is no forfeiture by a failure to object,] the reviewing court has no choice but to remand the matter for resentencing unless it finds the error nonprejudicial, i.e., it is 'not reasonably probable that a

7

more favorable sentence would have been imposed in the absence of the error.' [Citation.]" (*Scott, supra,* 9 Cal.4th at p. 355.)

In view of the totality of the circumstances, it is not reasonably probable that the trial court would have struck the firearm enhancement had it not made the erroneous finding that appellant's "prior convictions as an adult or sustained petitions as [a] juvenile . . . are of increasing seriousness." The erroneous finding was rendered harmless by the court's contrary finding that, as a mitigating factor, "he has no record or has [an] insignificant record of criminal conduct." Moreover, it is important to consider that the shooting occurred in the picnic area of a park near a playground where children were playing. Appellant's violent conduct endangered the safety of the children. When Brittish Stewart heard the gunshots, her "kids [were] all playing." She saw "other people grabbing their stuffed dolls and kids and running." Stewart was sitting on a "concrete little wall" about 20 feet away from the shooting. The wall surrounded the playground.

Finally, appellant maintains that the trial court abused its discretion by failing to consider the following mitigating factors: (1) He "'voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process.' ([Cal. Rules of Court,] Rule 4.423(b)(3).)" (2) Witnesses and letter writers vouched for his good, nonviolent character. (3) "At the sentencing hearing, appellant again accepted responsibility and expressed his remorse." "'The court is presumed to have considered all relevant factors unless the record affirmatively shows the contrary. [Citations.]' [Citation.] No contrary showing has been made here." (*People v. Sperling* (2017) 12 Cal.App.5th 1094, 1102.)

*People v. Dueñas*

Defense counsel did not object to the trial court's imposition of a $40 court operations assessment (§ 1465.8), a $30 criminal conviction assessment (Gov. Code, § 70373), a $300 restitution fine (§ 1202.4), and a $300 parole revocation restitution fine (§ 1202.45). Relying on *Dueñas*, *supra*, 30 Cal.App.5th 1157, appellant contends that the imposition of these assessments and fines "without a prior determination that [he] had the present ability to pay them violated [his] right to due process." In *Dueñas* the "court held it violated due process under both the United States and California Constitutions to impose a court operations assessment as required by Penal Code section 1465.8 or the court facilities assessment mandated by Government Code section 70373 . . . without first determining the convicted defendant's ability to pay." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 488-489.)

Appellant notes, "The *Dueñas* opinion was issued in January of 2019, months prior to appellant's sentencing on June 28, 2019." Thus, defense counsel should have been aware of *Dueñas* at the time of sentencing. Because counsel did not object to the assessments and fines, the *Dueñas* issue is forfeited. (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338; *People v. Torres* (2019) 39 Cal.App.5th 849, 860; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; *People v. Avila* (2009) 46 Cal.4th 680, 728-729.)

Appellant claims that counsel's failure to object denied him his constitutional right to the effective assistance of counsel. When, as here, "the record on appeal fails to show why counsel

acted or failed to act in the instance asserted to be ineffective, . . . unless there simply could be no satisfactory explanation, the claim [of ineffective counsel] must be rejected on appeal." (*People v. Kraft* (2000) 23 Cal.4th 978, 1068-1069.)

There is a satisfactory explanation why counsel did not object to the imposition of the assessments and fines. In view of appellant's lengthy prison sentence, counsel could have reasonably concluded that appellant would be able to pay the assessments and fines from his prison wages. ""Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages . . . . [Citation.]' [Citations.]" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.)

"Nothing in this record suggests [appellant] might be unable to work, or that [he] might be ineligible for prison work assignments. As such, we can infer that [he] will have the opportunity to earn prison wages and [he] can start paying these financial obligations. [Citations.] [¶] 'Prison wages range from $12 to $56 per month, depending on the prisoner's skill level.' [Citations.]" (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060.) We therefore reject appellant's claim that he was denied the effective assistance of counsel.

*Disposition*

The judgment is affirmed.

10

<u>NOT TO BE PUBLISHED</u>.

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

11

Craig Richman, Judge

Superior Court County of Los Angeles

_____

Kathy R. Moreno, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.