Filed 12/23/20  P. v. Bartos CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B294603 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. SA097919 |
| v. | |
| THOMAS EUGENE BARTOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark E. Windham, Judge.  Affirmed as modified.

Tasha G. Timbadia, Pamela J. Voich and Gordon B. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Thomas Eugene Bartos of driving under the influence of alcohol (DUI) within 10 years of a felony DUI, and found true he refused to take a chemical test. Bartos appeals, and we affirm the judgment as modified to strike the two one-year prior prison term enhancements.

## BACKGROUND

An information charged Bartos with one count of DUI within 10 years of a felony DUI. (Veh. Code, §§ 23152, subd. (a), 23550.5, subd. (a).) The information alleged that during the commission of the DUI, Bartos refused to take a chemical test (Veh. Code, § 23578), and he had four prior convictions with prison terms. All four prior convictions were felony DUIs.

At trial, a witness testified he was driving to the grocery store on April 10, 2018, when he noticed a white Kia Spectra driving erratically. The driver was shirtless and wearing a baseball cap. In moving traffic, he thrust his entire torso in and out of his driver's side window while talking and yelling at no one. The Spectra moved much more slowly than the traffic and under the speed limit, swerving to the lane marker and jerking back two to four times.

The witness's wife called 911 from the passenger seat, told the operator the driver seemed to be under the influence, described the erratic driving, and gave the make and model of the car. The jury heard a recording of the 911 call.

Los Angeles Police Department (LAPD) Officer Carlos Martin was on duty in the area, and heard a broadcast of reckless driving of a white Kia Spectra by a shirtless man wearing a baseball cap. He saw the Spectra crossing all three lanes of traffic at 15 to 20 miles per hour, nearly hitting the center divider. The car made a turn and accelerated to 50 to 55 miles

2

per hour in a 35 miles-per-hour zone.  Officer Martin followed the Spectra, turned on his lights, and chirped his siren, to stop the car for speeding and making a sudden turn.  The driver reached across to the passenger seat, dipping down, and after about a quarter mile pulled over.

Officer Martin approached the open driver's side window and smelled a strong odor of alcohol coming from the car.  The driver was Bartos.  His eyes were watery, his face was flushed, his speech was slurred, and his breath smelled of alcohol.  Bartos complied with Officer Martin's request to get out of the Spectra.  He was wearing shoes, a baseball cap, and white shorts with fresh, wet purple stains on them.  Bartos's balance was unsteady.  Officer Martin handcuffed and arrested him.

Bartos told Officer Martin he had not drunk any alcohol, only iced tea, and claimed to be a Santa Monica police officer (Officer Martin later checked and confirmed this was untrue).  Officer Martin helped Bartos to the police car and put him in the back seat.  On the front passenger floorboard of the Spectra was a small trash can holding a nearly empty 16-ounce can of Grape Four Loko (12 percent alcohol) with a small amount of purple liquid remaining, and two other empty 16-ounce cans of Four Loko.  The driver's side seat was wet with a purple stain.

The area was too crowded with pedestrians, cars, and bikes to do field sobriety tests at the scene.  Because Bartos obviously was drunk, Officer Martin drove him to the police station, and on the way offered him field sobriety and breathalyzer tests.  Bartos said "he wanted to do everything with his attorney."

At the station, Officer Martin presented Bartos to the watch commander, and read him the admonitions describing the consequences of refusing to provide a blood or breath sample,

and the requirement of submitting to a chemical test.  Bartos refused testing and said:  "I'm refusing this whole detainment." He denied he drove the car, saying a family friend had been driving and got out to go to a club.

Officer Martin placed Bartos in a holding cell.  When Officer Martin commented about the purple stain on his shorts, Bartos said he just had a beer and spilled that.  Bartos urinated on himself and on the floor in the holding cell.

The jury convicted Bartos of DUI and found true the allegation he refused to take a chemical test.  Bartos admitted the four prior felony DUI convictions.  The trial court struck two of the priors under Penal Code section 1385, subdivision (c). The court imposed the upper term of three years, and added one year each for the two remaining prior convictions under Penal Code section 667.5, subdivision (b),[1] for a total sentence of five years.  The court imposed fines and fees as discussed below.  Bartos filed this timely appeal.

## DISCUSSION

### 1.    *Bartos has not shown trial counsel was ineffective*

Bartos argues his trial counsel was ineffective because she did not call an expert to testify Bartos was mentally ill, and she did not request mental health diversion.

To prevail on his claim of ineffective assistance under either the federal or state Constitutions, Bartos "must show (1) deficient performance under an objective standard of professional reasonableness and (2) prejudice under a test of reasonable probability."  (*People v. Mayfield* (1993) 5 Cal.4th 142, 175.)  We must consider whether the record contains any

_____

[1]    All subsequent statutory references are to the Penal Code unless otherwise indicated.

4

explanation for counsel's choices, and we do not second-guess tactical or strategic decisions. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1058-1059.)

On July 10, 2018, defense counsel declared a doubt that Bartos was competent to stand trial, and the court appointed a clinical psychologist to prepare a psychiatric evaluation. On August 10, 2018, the trial court held a section 1368 hearing and took the report into evidence.

The report, dated August 7, 2018, stated that in an interview on July 20, 2018, Bartos immediately complained about his public defender, claimed she looked at him like he was crazy and was "chummy" with the judge, and there was no concrete evidence against him (" '[n]o toxicology' "). Public defenders were " 'shaky' " and his counsel was not on his side, " 'railing against me' " at a hearing for substitution of counsel. Bartos ended the meeting and left the room. The psychologist stated Bartos had sufficient legal knowledge to participate. The psychologist had reviewed a 2013 report from Patton State Hospital. The 2013 report (which is not in the appellate record) stated Bartos "suffered from a fixed delusional belief system that directly impacted his ability to cooperate with his attorney. His beliefs at the time of both cases are strikingly similar." Bartos "continues to suffer from delusional beliefs that impact his ability to cooperate with his attorney in a rational manner." He showed paranoia and could not cooperate during the interview, and she did not believe he would be able to work with his attorney. The report concluded Bartos was not competent to go to trial and medication might help treat his delusional disorder.

The trial judge noted "[t]his is a very strange situation with regard to the issue of competency. It is based solely on . . . the

ability of Mr. Bartos to cooperate with counsel. He's a very smart man. He understands the nature of the proceedings against him. He understands how the system works. But the issue is whether or not he can cooperate with counsel." Given the expert's opinion that Bartos likely suffered from a delusional disorder making him unable to cooperate, the court found him incompetent, and ordered him to Patton State Hospital for forced medication.

On September 28, 2018, while Bartos waited for placement at Patton, the Office of Diversion and Reentry identified him as a person in custody who was ordered to state hospital placement but became competent while waiting, under Welfare and Institutions Code section 1370, subdivision (a)(1)(G). In the attached evaluation, a psychologist stated he interviewed Bartos in jail on September 27, 2018 and had reviewed the August 7, 2018 report. Bartos was not receiving mental health treatment in jail and had been classified as having no current impairment. Bartos reported no history of mental illness, showed no psychotic symptoms, and appeared stable. He identified his charge, explained why it was a felony, showed insight into the circumstances, and was aware of possible sentences. He defined the roles of court personnel, identified his plea options, and understood plea bargaining. "Although his plan to proceed may reflect wishful thinking, his reasoning was rational and he acknowledged other outcomes were possible. Mr. Bartos expressed concern regarding a 'lack of communication' with his lawyer, but demonstrated no paranoid or delusional beliefs about his case or the legal system. While he may disagree with counsel, he has the ability to assist her in his defense if he chooses to do so." Bartos did not present symptoms of mental illness that compromised his competence to stand trial, and he

"demonstrated the capacity to rationally assist counsel in his defense." At a hearing on October 11, 2018, the court considered the report and found Bartos competent to stand trial.

Bartos does not argue trial counsel should have sought another competency evaluation. He argues that given the competency evaluations and the circumstances of the charged crime, counsel could have no tactical reason not to call an expert to testify on Bartos's mental health history and the effect his mental health had on his charged DUI. We disagree.

Bartos argues he "clearly exhibited signs of a potentially significant mental illness," had been declared incompetent before trial and diagnosed as "delusional," and his mental health records showed prior issues of competency. All this "demonstrated he had a potentially significant mental illness that likely inhibited his ability to distinguish between right and wrong or understand the nature of his actions," and yet counsel "neglected to call an expert witness to testify about the potential effect appellant's mental condition had on his crime."

First, Bartos does not argue that counsel was ineffective in not advising him to plead not guilty and not guilty by reason of insanity. Such a plea would result in a birfurcated trial: in the guilt phase, the defendant is conclusively presumed to have been legally sane at the time of the offense, and if the defendant is found guilty, in the sanity phase the defendant must prove by a preponderance of the evidence " 'that he or she was incapable of knowing or understanding the nature and quality of his or her act and of distinguishing right from wrong at the time of the commission of the offense.' " (*People v. McCarrick* (2016) 6 Cal.App.5th 227, 246.) Second, Bartos does not identify his purported mental illness *at the time of the offense.* A defendant

may not be found insane solely on the basis of his or her abuse of intoxicating substances. (*Id*. at p. 247; § 29.8.) The August 2018 competency report stating that Bartos's delusions prevented him from cooperating with counsel was not evidence that he acted under similar delusions when he drove erratically in April 2018, when all his behavior was consistent with extreme intoxication. And Bartos's belief in August that his counsel could not be trusted because she was "chummy" with the judge and not on his side contrasts with the September competency report, which described him as concerned about a lack of communication with counsel, but not paranoid or delusional.

Bartos does not identify how any expert testimony would have resulted in a better outcome. Strong evidence showed he drove while extremely intoxicated. Given his four prior felony DUI convictions, it was more than likely he understood the crime. And any "delusions" about counsel have no bearing on his refusal to test. Bartos said he wanted to "do everything with his attorney" and "refus[ed] th[e] whole detainment." Facing an uphill climb, defense counsel chose to argue the evidence did not show intoxication beyond a reasonable doubt because the jury did not see body or dash camera footage after Officer Martin pulled Bartos over, and the officer did not fill out a DUI form.

We presume counsel acted within the broad range of reasonableness and defer to tactical decisions. (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) On direct appeal, we reverse only if affirmative evidence demonstrates counsel had no rational tactical purpose to act as she did. (*Ibid*.) The appellate record contains no such affirmative evidence.[2] Nothing tells us what

<hr>

[2] The August and September 2018 competency reports were not included in the initial appellate record. After respondent's

an expert witness would or would not have said or whether the effect would have helped or hurt Bartos's defense, and he must "do more than surmise that defense experts *might* have provided more favorable testimony." (*People v. Lucas* (1995) 12 Cal.4th 415, 448, fn. 5.) Bartos has not shown a competent attorney would have been required to move for the admission of expert testimony that Bartos was mentally ill in April 2018.

Even assuming a competent attorney would have done so, Bartos has failed to meet his burden to show prejudice. We need not determine whether counsel's performance was ineffective if we see no prejudice suffered by the defendant from counsel's alleged mistakes. (*People v. Lawley* (2002) 27 Cal.4th 102, 136.) On this record, we cannot say Bartos would have been acquitted of DUI, or found not to have refused to take a chemical test, if counsel had sought appointment of a mental health expert.

It follows that counsel was not ineffective for failing to request mental health diversion, as nothing in the record affirmatively shows Bartos "suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders." (§ 1001.36, subd. (b)(1)(A).) Section 1001.36 went into effect on June 27, 2018, six months before Bartos's trial in December 2018. (Stats. 2018, ch. 34, § 24.) The statute allows the trial court discretion to grant "pretrial diversion, for the purpose of mental health treatment for up to two years, if it finds the defendant has a mental disorder that was a significant factor in the commission of the charged offense." (*People v. McShane* (2019) 36 Cal.App.5th 245, 259.)

---

brief was filed, we granted the requests of Bartos's second and third appellate counsel to supplement the record with the reports, and counsel elected to submit without filing a reply brief.

The court must dismiss the criminal charges if the defendant performs satisfactorily in diversion. (§ 1001.36, subd. (e).) The statute applies retroactively in cases like Bartos's, in which the judgment is not final. (*People v. Frahs* (2020) 9 Cal.5th 618, 624.)

The threshold requirement for mental health diversion is that the defendant suffers from a qualifying mental disorder playing a significant role in the commission of the offense. (*People v. Frahs*, *supra*, 9 Cal.5th at pp. 639-640.) As we explain above, the appellate record does not demonstrate that Bartos suffered from such a disorder when he drove the Spectra in April 2018. Counsel could reasonably have concluded there was an insufficient factual basis to argue Bartos suffered from a mental disorder qualifying him for diversion, and that the mental disorder played a significant role in his DUI. As we explained above, no evidence showed Bartos was delusional at the time of the offense. And to be eligible for diversion, Bartos also had to demonstrate the mental disorder motivating the criminal behavior would respond to mental health treatment, and he would not "pose an unreasonable risk of danger to public safety" if treated within the community rather than being incarcerated. (§ 1001.36, subd. (b)(1)(C), (E) & (F).) He does not argue the point or identify any record evidence that this would be so.

Bartos has not affirmatively shown counsel was ineffective.

## 2. *Bartos has forfeited his challenge to the fines and fees*

Bartos also argues that the trial court violated his federal and state rights to due process by imposing a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $300 restitution fine (§ 1202.4, subd. (b)), without determining his

ability to pay, citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  Our colleagues in Division Two recently held that *Dueñas* was wrongly decided.  (*People v. Hicks* (2019) 40 Cal.App.5th 320, 327-329, review granted Nov. 26, 2019, S258946; see also *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060, 1067-1069; cf. *People v. Caceres* (2019) 39 Cal.App.5th 917, 926-927 [concluding "the due process analysis in *Dueñas* does not justify extending its holding beyond" the " 'extreme facts' " presented there].)  The California Supreme Court is currently considering whether a court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments.  (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)  Pending further guidance from our Supreme Court, we agree with *Hicks.*

In addition, a defendant generally must first object and raise his inability to pay fines, fees, and assessments, or forfeit the issue on appeal.  (*People v. Avila* (2009) 46 Cal.4th 680, 729; *People v. Aguilar* (2015) 60 Cal.4th 862, 866; *People v. Rodriguez* (2019) 40 Cal.App.5th 194, 206.)  We agree with our colleagues in Division Eight that this general rule applies here to the restitution fine and the assessments imposed under the Penal and Government codes.  (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155; but see *People v. Castellano* (2019) 33 Cal.App.5th 485, 489.)

**3.** ***We must strike the two one-year enhancements under section 667.5, subdivision (b) as amended***

In a birfucated proceeding, Bartos waived his right to a court trial and admitted the four prior prison term allegations, all of which were felony DUI convictions.  The trial court

dismissed two of the prior prison term findings in the interest of justice (§ 1385, subd. (c)) and imposed one year for each of the remaining two prior prison terms.

We agree with Bartos that the two prison priors must be stricken under Senate Bill No. 136, which took effect on January 1, 2020, and amended section 667.5, subdivision (b). The amendment states a one-year prior prison term enhancement applies only if the defendant served the prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1; *People v. Lopez* (2019) 42 Cal.App.5th 337, 340-341.) The amended statute applies to defendants whose cases are not yet final. (*Lopez*, at pp. 341-342; *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772-773.) Neither of Bartos's two prison priors was for a sexually violent offense. Accordingly, we order them stricken.

## DISPOSITION

We modify the judgment to strike Bartos's two one-year prior prison term enhancements and, as modified, affirm the judgment of conviction. The trial court is to prepare an amended abstract of judgment and to forward a certified copy to the California Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


DHANIDINA, J.


13