Filed 12/22/21  P. v. Huynh CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>     v.<br><br>SON THANH HUYNH,<br><br>   Defendant and Appellant. | G059708<br><br>(Super. Ct. No. 20WF0568)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed as modified.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Because criminal trials are adversarial in nature, the attorneys have wide latitude in closing argument to point out perceived flaws in opposing counsel's theories and interpretation of the evidence. The primary question in this case is whether the prosecutor went too far in that regard by using a painting by Georges Seurat and a quotation from President Harry Truman in his critique of the defense case. Contrary to appellant's claims, we find nothing improper in the prosecutor's argument here. Nor do we find any reason to disturb the trial court's ruling on appellant's *Pitchess* motion. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).) Therefore, other than to correct a clerical error in the minute order of the sentencing hearing, we affirm the judgment.

FACTS

Appellant Son Thanh Huynh entered a Costa Mesa grocery store on an electric shopping scooter with a backpack in his lap. After filling the pack with wine and liquor, he left the store without paying for the items.

Having witnessed the theft, store manager David Rodriguez followed appellant outside and confronted him. When appellant failed to produce a receipt for the alcohol, Rodriguez reached for the backpack, which was still in appellant's lap. However, appellant bit Rodriguez's hand, so Rodriguez pulled his hand away, pushed appellant's head, and stepped back. As he did, the backpack fell to the ground, breaking some of the bottles.

At that point, appellant threw himself to the ground and began flopping around like a fish. Then he got up and started to hobble away. But Rodriguez and several of his coworkers corralled him until the police arrived and took him into custody. A search of the backpack revealed 15 bottles of wine and 2 bottles of whiskey. At the scene, the police also found a bag full of toothpaste and other sundry items appellant had stolen from the store. When interviewed by the police, appellant said he took the merchandise because he was hungry.

As a result of the incident, Rodriguez suffered a one-inch laceration on his left hand. It was not bleeding when police investigator Robert Rueda photographed it at the scene. However, Rodriguez did have blood drops on his shirt, and he was insistent the wound was from appellant biting him.

The defense disputed this. It conceded appellant was guilty of theft for stealing from the store. However, it argued appellant was not guilty of robbery because he did not use force or fear to retain the goods from Rodriguez. The defense theorized Rodriguez cut his hand while trying to snatch the backpack from appellant. In support of this theory, it called investigator Rueda as a witness.[1] He testified the wound on Rodriguez's hand did not have readily apparent teeth marks, nor did it have any redness or bruising. Thus, he was unable to discern whether it was caused by a bite or some other agency. Nevertheless, the jury convicted appellant of second degree robbery, and the trial court placed him on probation subject to various terms and conditions. This appeal followed.

## DISCUSSION

### *Closing Argument*

Appellant contends the prosecutor committed misconduct by utilizing a pointillistic painting and a presidential quotation in his closing argument. In particular, appellant argues that in utilizing these devices, the prosecutor effectively shifted the burden of proof. So, instead of thinking the prosecution was required to prove his guilt beyond a reasonable doubt, the jury would have believed the onus was on the defense to establish a reasonable doubt as to his guilt. We are not persuaded.

In the initial phase of his closing argument, the prosecutor told the jurors the defense wanted them to focus on the "little things not connected to the big picture." But he wanted them to adopt a holistic view of the evidence and "see all the parts of what

---

[1] Rueda was the sole defense witness.

3

occurred that day[.]" To illustrate why this was important, the prosecutor drew the jurors' attention to a painting by Georges Seurat.[2] The painting is perhaps the foremost example of pointillism. It is comprised of small dots of color intended to be viewed from a distance; in fact, that is the only way the overall image of the painting becomes evident. Analogizing the painting to the evidence presented in this case, the prosecutor told the jurors, "When you step back and look at the whole picture, you can see what happened. That's what I'm asking you to do. I'm asking you to take the time, review the evidence, remember the witness testimony. Take a step back and look at the whole picture."

Defense counsel objected to this argument on the basis it misstated the burden of proof and distorted the concept of reasonable doubt. However, the trial court overruled the objection, finding the prosecutor's argument constituted fair comment on how the jury should approach the evidence. The prosecutor then returned to this theme by imploring the jury to "remember[] everything" and focus on "the big picture" in determining whether appellant was guilty of robbery.

In response, defense counsel argued the small details in the case were actually very important because they shed light on whether Rodriguez was telling the truth about appellant biting him. Therefore, the jury should not overlook the "little things" that came out in the evidence. During his closing argument, defense counsel also quoted liberally from Mark Twain, Thomas Jefferson and Abraham Lincoln.

Not to be outdone, the prosecutor started his rebuttal argument by telling the jury: "I've got a quote from a president for you. Comes from Harry S. Truman. 'If you can't convince them, confuse them.'" Defense counsel objected to the quote as a personal attack on his integrity, but the objection was overruled, and the prosecution repeated it to the jury. At that point, defense counsel made a "burdenship" objection, but that objection was also overruled.

---

[2] There was some confusion about whether the painting was by Claude Monet, but it was actually Seurat's masterpiece, *A Sunday Afternoon on the Island of La Grande Jatte*.

4

The prosecutor concluded his rebuttal by urging the jury to consider "the totality of the circumstances instead of those little pinpricks" depicted in the Seurat painting. Defense counsel objected this remark distorted the burden of proof, but the trial court disagreed and overruled the objection.

In his role as an advocate for the People, the prosecutor has broad leeway in closing argument to describe the deficiencies in opposing counsel's tactics and factual account of the evidence. (*People v. Gonzales* (2012) 54 Cal.4th 1234, 1296.) While "it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements" (*People v. Marshall* (1996) 13 Cal.4th 799, 831), there is nothing wrong with comments intended to assist the jury in carrying out its fundamental obligation to "decide what the facts are" and "to decide what happened" based on the evidence presented at trial. (CALCRIM No. 200.) Indeed, it has been said that the "sole purpose of closing argument is to assist the jury in analyzing, evaluating and applying the evidence." (*United States v. Dorr* (5th Cir. 1981) 636 F.2d 117, 120.)

With that in mind, it seems clear to us the prosecutor did not commit misconduct by imploring the jury to take a holistic view of the evidence in determining the truth of the charge against appellant. Fearing the jurors would lose perspective if they only focused on the "little things," the prosecutor urged them to consider "everything," meaning "all the parts" and "the totality of the circumstances," to ensure they got a full and complete understanding of the evidence. This argument was consistent with the jury's duty to "impartially compare and consider *all the evidence that was received throughout the entire trial*." (CALCRIM No. 103, italics added.) It was not improper in any respect.

Nor was the prosecutor's use of the Seurat painting. To be sure, there is always the potential for error and confusion when the prosecutor uses a demonstrative aid to help illustrate the concept of reasonable doubt to the jury. (See, e.g., *People v. Otero*

(2012) 210 Cal.App.4th 865, 869–874 [condemning the prosecutor's use of a map of California to explain reasonable doubt]; *People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1264–1269 [condemning the prosecutor's use of a puzzle of the Statue of Liberty to explain reasonable doubt].)  In the present case, however, the prosecutor did not use the Seurat painting for that reason, or to help explain the burden of proof.  Instead, he used it to assist the jury in analyzing the evidence.  He tried to make sure the jury was not too myopic in terms of assessing the evidence and applying it to the elements of the charged offense.  That being the case, his use of the painting was not misconduct.  (*Dietz v. Davey* (N.D. Cal. 2018) 2018 U.S. Dist. LEXIS 128342 ["the prosecutor's use of a pointillist painting to illustrate how individual pieces of evidence come together to produce a whole picture was not improper nor did it lessen the burden of proof."].)

Turning to the Truman quote, we can see how the prosecutor's use of the old saying, "If you can't convince them, confuse them" might be troublesome at first blush.  If we assume the term "convince" was intended to imply the defense had the burden of proof to establish a reasonable doubt about appellant's guilt, then there certainly would be a problem.  However, "[w]hen attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  [Citation.]' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

When the prosecutor delivered the Truman quote in rebuttal, he used it as a springboard to attack the merits of defense counsel's closing argument.  His point was that the defense was not one of rationality but of misdirection.  At no point did he say or imply the quotation had anything to do with either the burden of proof or the reasonable doubt standard.  Those concepts were fully and properly explained to the jury.  In fact,

6

the record shows the trial court repeatedly instructed the jury that the prosecution had the burden to prove all of the elements of the charged offense beyond a reasonable doubt. And that is something that both defense counsel and the prosecutor emphasized in their respective arguments, as well.

As such, it is not reasonably probable the jury construed the Truman quote as turning the burden of proof on its head. We do not believe the quote was either misconduct or prejudicial in the context in which it was delivered and considering everything else the jury was told. (*Casey v. Virga* (C.D. Cal. 2011) 2011 U.S. Dist. LEXIS 152648; *State v. Talley* (Tn. App. 2018) 2018 Tenn.Crim.App. LEXIS 658; *Swarb v. State* (Tx. App. 2003) 125 S.W.3d 672, 686.)

*Pitchess Motion*

Appellant also asks that we independently review the trial court's handling of his *Pitchess* motion to determine whether any discoverable material was improperly withheld from the defense. Having reviewed the sealed transcript of the motion hearing, we find no basis to disturb the court's *Pitchess* ruling.

In *Pitchess*, our Supreme Court held a defendant has a right to discovery of the personnel records of peace officers to ensure "a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess, supra*, 11 Cal.3d at p. 535.) However, the right is not unlimited; only those records material to the pending litigation are subject to release. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019; Pen. Code, §§ 832.7, 832.8; Evid. Code, §§ 1043-1045.)

In this case, appellant made a *Pitchess* motion with respect to two of the police officers who were involved in his arrest. Appellant sought information bearing on the officers' credibility to impeach various statements contained in their reports. As to the first officer, the trial court ruled there was insufficient evidence to justify a review of his personnel records because he was not a percipient witness to any of the events giving rise to this case. Appellant does not challenge that ruling on appeal.

7

As to the second officer, the court found good cause to conduct an in-camera review of his personnel records. However, after conducting that review, the court determined there was nothing discoverable in the officer's records. Appellant requests that we independently review those records to ensure the court's determination was correct.

Respondent does not oppose the request, and we agree independent review would be the most effective way to assess the propriety of the court's order. (See *People v. Nguyen* (2017) 12 Cal.App.5th 44, 49-51 (unanimous conc. opn. of Bedsworth, Acting P.J.).) But our Supreme Court has determined that, in the context of a *Pitchess* motion, meaningful appellate review can be accomplished by examining the sealed transcript of the trial court's in-camera review proceedings and seeing if the trial court *said* it adequately fulfilled its function. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209; *People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) Therefore, we have no basis for examining the officer's personnel records ourselves. (*Ibid.*)

Having reviewed the sealed transcript of the hearing on appellant's discovery motion, we find the trial court fulfilled its duties under *Pitchess* by making a record of the documents it examined and explaining the basis for its decision. (See *People v. Mooc, supra*, 26 Cal.4th at p. 1229 [in ruling on *Pitchess* motion, the trial court should make a record of the documents it examined by describing them on the record]; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 462 [same].) We therefore have no ability to disturb its ruling.

### Clerical Error

Lastly, the parties agree that while the trial court ordered appellant to serve 364 days in jail as part of his probation, the minute order of the sentencing hearing put that number at 365. As the trial court's oral pronouncement controls (*People v. Mitchell* (2001) 26 Cal.4th 181, 185), we will modify the minute order to correct this clerical oversight.

8

## DISPOSITION

The minute order of the sentencing hearing held on October 16, 2020 is modified to reflect the trial court ordered appellant to serve 364 days in jail as a condition of probation.  In all other respects, the judgment is affirmed.


                                        BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9