Filed 10/19/20  P. v. Dixon CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B299436 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. VA146759 |
| FRANK DIXON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger T. Ito, Judge. Conditionally reversed and remanded with directions.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Attorney General, Idan Ivri and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Frank Dixon of assault by means likely to produce great bodily injury and two counts of resisting an executive officer. The jury and trial court found true various additional allegations. The court sentenced Dixon to 17 years and four months in state prison. On appeal, Dixon raises three arguments: (1) his case should be remanded for a mental health diversion eligibility hearing; (2) the trial court abused its discretion by refusing to consider his mental illness as a mitigating factor at sentencing; and (3) the court erred under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 by imposing assessments and a restitution fine without determining his ability to pay. We agree with Dixon's first argument. We therefore conditionally reverse the judgment and remand the case to the trial court with instructions to determine whether Dixon is eligible for mental health diversion. With respect to Dixon's second argument, although we decline to decide whether the court abused its discretion, we vacate the sentence so that if, on remand, the trial court finds Dixon ineligible for diversion, it may consider the mental health evidence adduced at the diversion hearing as a possible mitigating sentencing factor. We reject Dixon's *Dueñas* argument.

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney filed an information charging Dixon with attempted second degree robbery (Pen. Code, §§ 664, 211[1]; count one), assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4);

---

[1] All undesignated statutory references are to the Penal Code.

count three),[2] misdemeanor battery (§ 242; count four), and two counts of resisting an executive officer (§ 69; counts five and six). The information further alleged Dixon personally inflicted great bodily injury during the commission of count three (§ 12022.7, subd. (a)), sustained one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and sustained one prior serious felony conviction (§ 667, subd. (a)(1)).[3] At the People's request, the trial court later dismissed counts one and four. The jury found Dixon guilty on the remaining counts (counts three, five, and six). The jury also found true the great bodily injury enhancement on count three. In a bifurcated proceeding, the trial court found true the strike prior and the serious felony prior. The court sentenced Dixon to 17 years and four months in state prison, comprised of an eight-year term for count three (a four-year upper term, doubled for the strike prior), plus three years for the great bodily injury enhancement, a consecutive term of sixteen months on count five (one third of the middle term of two years, doubled for the strike prior), and five years for the serious felony prior. The court imposed a concurrent low term of sixteen months on count six.

Dixon timely appealed.

---

[2]     The information skipped from count one to count three without enumerating a second count.

[3]     Before trial, the trial court declared a doubt as to Dixon's competency. The court later found him competent to stand trial.

# FACTUAL BACKGROUND

## I.    Prosecution case

On January 15, 2018, at around 7:45 p.m., Dixon was at the Norwalk train station, near a snack stand owned and operated by a 67-year-old. Dixon began acting aggressively and yelling profanity at Keith Russell, a regular customer of the snack stand. Russell asked Dixon to leave Dixon and Russell walked away from the snack stand, and Dixon initiated a physical altercation with Russell.  The two men ended up wrestling on the floor with Dixon trying to punch Russell and Russell trying to defend himself. The stand owner ran over and yelled at Dixon to stop fighting. Dixon punched the stand owner in the head, and she fell to the ground. While the stand owner was on the ground, Dixon raised his foot chest-high and stomped on her head. The stand owner lost consciousness, and she did not wake up until she was at the hospital.

Security officers rushed over and tackled Dixon. Dixon struggled with the security officers, and they handcuffed him. Los Angeles Deputy Sheriff Thibodeaux and his partner arrived and took Dixon into custody. Dixon threatened the officers and did not cooperate with them. When Thibodeaux directed Dixon to stand up off the ground, Dixon became enraged and kicked one of the security officers hard in the knee. Dixon also forcefully attempted to head-butt one of the arresting deputies.

As a result of the incident, the stand owner had brain surgery and is partially paralyzed. She is no longer able to walk.

## II. Defense case

Dixon testified in his own defense. He was at the Norwalk station waiting to drop off groceries for his girlfriend. Russell started a verbal altercation with him. Dixon walked away, and Russell followed him. Russell told Dixon he wanted to fight, and punched Dixon in the face. Dixon grabbed Russell, and they both fell to the ground. The stand owner approached the fight, threw three punches at Dixon, and slipped and fell to the concrete. Dixon denied punching the stand owner or stomping on her head.

## DISCUSSION

## I. Mental health diversion

Dixon first contends his convictions must be conditionally reversed, and the case must be remanded for a mental health diversion hearing. He argues the trial court declined to consider his eligibility for pretrial diversion based on an erroneous belief that it could not do so under section 1001.36 until Dixon had been found guilty and was awaiting sentencing. The Attorney General agrees the trial court erred, but contends the error was harmless and remand would be futile because Dixon cannot show he does not pose an unreasonable risk of danger to public safety. We reject the Attorney General's argument and remand the matter for a mental health diversion hearing.

Before trial, Dixon, who was pro se at the time, asked the court to consider his eligibility for mental health diversion. The court denied the request, stating it could only consider Dixon's eligibility for diversion at sentencing assuming the jury found him guilty. We agree with the parties that the trial court erred in

5

this regard. Section 1001.36 specifies that pretrial mental health diversion is available "at any point in the judicial process from the point at which the accused is charged until adjudication[.]" (§ 1001.36, subd. (c).)

We now turn to the Attorney General's argument that remand would be futile. Applying the principles recently set forth by our Supreme Court in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), we reject this contention. "[A] conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when, as here, the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion— the defendant suffers from a qualifying mental disorder (§ 1001.36, subd. (b)(1)(A))." (*Frahs*, *supra*, 9 Cal.5th at p. 640.) The record contains some evidence that Dixon has been diagnosed with schizophrenia and possibly post-traumatic stress disorder.[4] Dr. Haig J. Kojian, a psychologist, states in a competency report that Dixon told him he suffers from schizophrenia and takes medication to treat the disorder. In addition, Dixon's probation report indicates he suffers from schizophrenia and post-traumatic stress disorder.

We reject the Attorney General's argument that the harmless error standard articulated in *People v. Watson* (1956) 46

---

[4]     Section 1001.36, subdivision (b)(1)(A) defines the qualifying mental disorders as any "mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including, but not limited to, bipolar disorder, schizophrenia, schizoaffective disorder, or post-traumatic stress disorder, but excluding antisocial personality disorder, borderline personality disorder, and pedophilia . . . ."

Cal.2d 818 (*Watson*) applies here. As noted above, our Supreme Court in *Frahs* did not apply the *Watson* harmless error standard, but rather concluded a conditional limited remand is warranted where the record affirmatively discloses that the defendant appears to suffer from a qualifying mental disorder. (*Frahs*, *supra*, 9 Cal.5th at p. 640.) We also reject the Attorney General's contention that remand would be futile because the court, in imposing the upper term, noted the vulnerability of the victim and Dixon's "increasing and longstanding criminal history." (See *Frahs*, *supra*, 9 Cal.5th at p. 639 [rejecting Attorney General's argument that remand would be futile because the court found no significant mitigating factors that weighed in favor of striking defendant's prior enhancement, explaining "the trial court could find that the[] criteria for diversion are satisfied even if that court believed defendant's mental disorder did not significantly reduce his *culpability* for the crimes." Italics in original.].) It is possible the trial court may determine Dixon is eligible for mental health diversion despite its comments at sentencing.

In arguing remand would be futile, the Attorney General, also relies on *People v. Jefferson* (2019) 38 Cal.App.5th 399 (*Jefferson*). *Jefferson* concluded remand was futile because "the trial court clearly indicated defendant's alleged mental health disorder was not a significant factor in his commission of the charged offenses, making him ineligible for diversion." (*Id.* at p. 408.) The record in Dixon's case contains no such indication.

We remand to allow the trial court to determine whether Dixon suffers from a mental disorder that qualifies him for diversion. If the court determines Dixon suffers from a qualifying mental disorder, it must then decide whether to grant him

7

pretrial mental health diversion. Like the Supreme Court in *Frahs*, "[w]e express no view concerning whether [Dixon] will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Frahs*, *supra*, 9 Cal.5th at p. 641.)

## II. The trial court may consider Dixon's mental health as a possible mitigating sentencing factor

Dixon next argues the trial court abused its discretion in violation of due process by not considering his mental illness as a mitigating factor during sentencing. The Attorney General disagrees, noting the trial court afforded Dixon the opportunity to undergo psychiatric evaluation so the defense could submit a written report for the court's consideration before sentencing. Dixon declined the court's offer, instead insisting on being sentenced immediately. We decline to decide whether the trial court abused its discretion. For the reasons discussed below, we vacate Dixon's sentence. If the trial court finds Dixon ineligible for mental health diversion, it may use the mental health information adduced at the diversion hearing to re-sentence him.

### A. Relevant proceedings

After the jury rendered its verdict, defense counsel requested a continuance to allow a psychiatrist to evaluate Dixon's mental health for purposes of sentencing. The trial court agreed to a continuance. After speaking with Dixon, however, defense counsel stated Dixon wished to proceed that afternoon with a bench trial on his prior convictions and sentencing.

8

That afternoon, the trial court held a hearing on the prior conviction allegations and found them true. Dixon stated he wanted to proceed directly to sentencing despite defense counsel's indication that he needed a continuance to file a *Romero* motion. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.) Trial counsel asked the court to consider Dixon's mental illness as a factor in mitigation to strike the prior conviction enhancements and not impose the upper term.

The trial court ruled it did not have enough information concerning Dixon's mental health to consider it as a mitigating factor.[5] Defense counsel pointed out the probation report stated Dixon had schizophrenia, and the court stated it was not going to rely on the report because it did not know if the schizophrenia determination was based on medical documentation or Dixon's own statements. The prosecution noted Dr. Kojian had submitted a psychological assessment, but the court observed the report was prepared to assess competence to stand trial. The court noted competence to stand trial is not the same as whether Dixon's mental illness should be considered as a mitigating factor. The court offered to refer Dixon for a psychological evaluation and hold over sentencing. Dixon declined the offer and insisted on being sentenced immediately.

---

[5] The court stated: "[A]t this juncture I don't have any documentary evidence, any medical evidence that Mr. Dixon is in fact mentally ill and therefore that would be a basis for any kind of mitigation or a basis for a *Romero* motion [¶]. . . .[¶] I can't mitigate it and I can't grant a *Romero* motion based on his mental illness when I have nothing before me that suggests -- besides his behavior, which is truly obnoxious, obstreperous and aberrant, it is not per se indicative of either an N.G.I., a 1385, anything along those lines."

Dixon was removed from the court following an outburst. Defense counsel again argued Dixon was mentally unwell and asked the court to "extend mercy" to him. The trial court proceeded to sentencing, declined to strike the strike, imposed the high term, and imposed the strike prior and serious felony prior enhancements. In selecting the upper term, the court noted the vulnerability of the victim and Dixon's "increasing and longstanding criminal history" as aggravating factors.

### B. Analysis

Ordinarily, we would review Dixon's challenge to his sentence for abuse of discretion. (*People v. Avales* (1996) 47 Cal.App.4th 1569, 1582.) In this instance, however, we decline to consider whether the trial court abused its discretion. At sentencing, the trial court expressed a willingness to consider Dixon's mental health as a possible mitigating factor, but stated it needed Dixon to undergo further psychological evaluation. Dixon declined the court's offer and insisted on being sentenced immediately, effectively depriving the court of the opportunity to factor mental health into its sentencing decision. As discussed above, on remand the court is to hold a mental health diversion eligibility hearing. If the trial court finds Dixon ineligible for diversion, the information concerning Dixon's mental health adduced at the hearing will nonetheless allow the court to decide whether it warrants mitigating Dixon's sentence. We therefore vacate Dixon's sentence and allow the trial court the opportunity to utilize the information adduced at the diversion hearing to re-sentence Dixon.

10

**III.    Dixon's *Dueñas* argument**

The trial court imposed three $40 court security assessments (§ 1465.8, subd. (a)(1)), three $30 criminal conviction assessments (Gov. Code, § 70373), and a $300 restitution fine (§ 1202.4, subd. (b)(1)). Relying on *Dueñas, supra*, 30 Cal.App.5th 1157, Dixon now challenges the assessments and fine on due process grounds.[6] Dixon concedes he did not object to the imposition of the assessments or fine. Dixon was sentenced over six months after *Dueñas* was decided. Dixon forfeited his *Dueñas* argument by failing to object or request an ability to pay hearing. (See *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155.)

We also reject Dixon's contention, raised in the alternative, that his counsel's failure to object constituted ineffective assistance of counsel. To establish ineffective assistance of counsel, an appellant bears the burden of showing prejudice, meaning a reasonable probability that but for the challenged act or omission of counsel, the appellant would have obtained a more favorable result. (*People v. Centeno* (2014) 60 Cal.4th 659, 674-676; see also *In re Crew* (2011) 52 Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient. [Citations.]"].) Dixon asserts there is a

---

**6**    Our Supreme Court has granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844, on the issue of whether a trial court must "consider a defendant's ability to pay before imposing or executing fines, fees, and assessments," and if so, "which party bears the burden of proof regarding defendant's inability to pay."

reasonable probability the trial court would have found he lacked the ability to pay the fine and assessments. Dixon, however, identifies no support for his assertion other than a statement in the probation officer's report that he was unemployed prior to his incarceration, the fact that the probation report states it is unknown whether he has any assets, and his use of appointed counsel. (Cf. *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1075-1076 [inability to pay costs of appointed counsel does not establish inability to pay restitution fine or other court-imposed fees].) Further, the court might have found him able to pay the fine and assessments from prison wages. (See *id.* at pp. 1075-1077 [any *Dueñas* error was harmless due to defendant's ability to earn prison wages equaling amount of fine and assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [same]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139-140 [same].) He therefore fails to satisfy his burden to show prejudice.

## DISPOSITION

The judgment is conditionally reversed. The cause is remanded to the trial court with directions to conduct a diversion eligibility hearing under section 1001.36. If the court determines Dixon qualifies for diversion under section 1001.36, then it may grant diversion. If Dixon successfully completes diversion, then the court shall dismiss the charges. If, however, the trial court determines Dixon is ineligible for diversion under section 1001.36, or he does not successfully complete diversion, then the court shall re-sentence Dixon. In determining Dixon's sentence, the court may consider mental health as a possible mitigating factor.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

COLLINS, J.

13